UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | File No. 1:08-CR-8 |
| | : | |
| RUSSELL CYBULSKI, | : | |
|     Defendant | : | |
| | : | |

RULING ON MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS
(Paper 21)

I.    Introduction

Defendant Russell Cybulski is charged with possession of firearms by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3), knowingly making a false statement to federal agents in violation of 18 U.S.C. § 1001, and conspiracy to distribute a substance containing cocaine base in violation of 21 U.S.C. §§ 841(a), 846. Cybulski moves to suppress evidence obtained from a search of his motor home at the border and statements made to law enforcement officers. He argues his constitutional rights were violated so the evidence and his statements must be suppressed. (Paper 21.) The government opposes the motion. (Paper 24.) For the reasons stated below, Cybulski's motion is denied.

II.  <u>Background</u>[1]

On April 24, 2007, Cybulski and Jodie Franco, both United States citizens, attempted to enter the United States from Canada at Highgate, Vermont. The pair was traveling in a motor home driven by Franco. The vehicle was directed to a secondary inspection because Franco appeared nervous. Cybulski and Franco stated they had nothing to declare and had no weapons except a machete. Officers searched the vehicle and found, in addition to the machete, an open box of ammunition, an empty holster, and a bulletproof vest. Both individuals were searched and asked again about weapons in the vehicle. They both denied having guns.

The vehicle was run through the Vehicle and Cargo Inspection System (VACIS). Because "anomalies were discovered" during the VACIS scan (Paper 21 at 2), Border Patrol agents used a dog to search the vehicle. After the dog alerted to the bed area, agents removed screws from the bed frame. In the compartment beneath the bed, agents found three hard gun cases with a handgun in each, two cases of ammunition, a small bag containing cash, and a plastic case with trace amounts of white powder. Agents also found two bottles of pills, a small plastic bag of pills, and a digital scale in the bathroom.

The pair told the agents they were from Florida, were in the area visiting friends, and had gone to Canada the previous afternoon. Agents found handwritten maps of

---

[1] The facts described in this section are gleaned from the parties' briefing on the motion (Papers 21, 24).

the Swanton and Highgate areas. Cybulski and Franco had also very recently dyed their hair.

Vermont state police took custody of Cybulski. He was charged with misdemeanor possession of controlled substances, in violation of Vt. Stat. Ann. tit. 18, § 4234(a)(1), and later pled guilty. Franco was released with the vehicle.

On May 15, 2007, while in custody awaiting disposition of the state charge, agents from the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) interviewed Cybulski. The interview was conducted in a private office area in Northwest State Correctional Facility. Cybulski signed an Advice of Rights and Waiver, which was read aloud to him as he followed along. The agents advised Cybulski they did not want to discuss the state charge. Cybulski told them he intended to plead guilty in state court the following day.

During the interview, Cybulski made several statements including: (1) two of the handguns were his; (2) he purchased the ammunition in Florida; (3) he illegally used prescription medication; and (4) he previously traveled to Vermont to sell Oxycodone pills. An agent wrote out a two-page statement containing these admissions and Cybulski signed each page. Cybulski also stated that during the stop at the border, he had forgotten the guns and ammunition were in the vehicle. At the time of the interview, Cybulski was represented by counsel on the state charges.

III.   Discussion

   A.   Motion to Suppress Evidence

The Fourth Amendment prohibits unreasonable searches and seizures. Border searches, however, "are reasonable simply by virtue of the fact that they occur at the border" because of "the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." United States v. Flores-Montano, 541 U.S. 149,152-53 (2004) (quoting United States v. Ramsey, 431 U.S. 606, 616 (1977)). Because the agents were authorized to conduct the search of the motor home at the border, the evidence obtained from the search is admissible.

Even if the search required reasonable suspicion, as suggested by Cybulski (Paper 21 at 3-4), it passes constitutional muster. According to Cybulski, an unreasonable or overly intrusive border search requires reasonable suspicion. Id. Cybulski points to such considerations as damage to the vehicle affecting safety or operability, the offensiveness of the search, and the level of warranted suspicion to determine reasonableness. Id. Here, the vehicle's safety and operability were not impaired -- Franco drove the motor home following the search. Cybulski has pointed to no evidence the search, including the removal of a screwed-in panel, was offensive or even extended. See Flores-Montano, 541 U.S. at 155-56 (finding removal, disassembly, and reassembly of a vehicle's fuel tank was not so destructive as to require suspicion). Finally, based on the agents' observation of Franco's nervousness, the pair's recently dyed hair, and discovery of ammunition, a gun holster and bulletproof vest, as well as

4

the anomalous VACIS scan and positive dog search, suspicion was warranted. Accordingly, the search was reasonable and, even under Cybulski's formulation, did not require reasonable suspicion.[2]

> B. <u>Motion to Suppress Statements</u>

The Sixth Amendment provides an accused the right to assistance of counsel in all criminal prosecutions. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, such as by indictment or information. <u>United States v. Craig</u>, No. 2:04-CR-156, 2009 WL 281138, at *6 (D. Vt. Feb. 4, 2009) (quoting <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991)). The right is also "offense specific," meaning it cannot be invoked once for all future prosecutions. <u>McNeil</u>, 501 U.S. at 175.

Once the right has attached, "any subsequent waiver during a police-initiated custodial interview is ineffective." <u>Id.</u> Further, "the right encompasses offenses that, even if not formally charged, would be considered the same offense under the <u>Blockburger</u> test." <u>Texas v. Cobb</u>, 532 U.S. 162, 173 (2001). The <u>Blockburger</u> test asks whether a charge requires proof of a fact which the other does not. <u>Id.</u> (quoting <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932)).

Cybulski's Sixth Amendment right to counsel attached after he was charged in Vermont state court with misdemeanor possession of controlled substances in violation

---

[2] The Court notes if reasonable suspicion were required, in these circumstances, the agents had reasonable suspicion of criminal activity. <u>United States v. Bayless</u>, 201 F.3d 116, 132 (2d Cir. 2000) (noting reasonable suspicion should be based on specific and articulable facts objectively indicating unlawful conduct).

of Vt. Stat. Ann. tit. 18, § 4234(a)(1). Because Cybulski's Sixth Amendment right is offense specific, however, it only precludes the government from interviewing him about drug possession. The ATF agents interviewed Cybulski about firearms, illegal use of prescription drugs, and selling drugs. At the time of the interview in May 2007, Cybulski was not charged with federal drug or firearms offenses. Later, in January 2008, Cybulski was charged with being an unlawful user of a controlled substance in possession of firearms in violation of 18 U.S.C. § 922(g)(3), knowingly making a false statement to federal agents in violation of 18 U.S.C. § 1001, and conspiring to distribute a substance containing cocaine base in violation of 21 U.S.C. §§ 841(a), 846. Cybulski has not been charged with any federal offense for possessing drugs.

Under the Blockburger test, the facts needed to prove the Vermont state charge of possessing a stimulant, depressant or narcotic drug differ from those required to prove the federal offenses. The state charge requires proving Cybulski knowingly possessed a stimulant, depressant or narcotic drug. The federal firearms offense requires proving Cybulski was an addict or unlawful user of controlled substances; he knowingly possessed a firearm; and the firearm traveled in interstate commerce prior to his possession of it. 18 U.S.C. § 922(g)(3). The federal false statement offense requires proving Cybulski knowingly and willfully made a materially false, fictitious or fraudulent statement or representation. 18 U.S.C. § 1001. The federal conspiracy charge requires proving Cybulski conspired with others to knowingly and intentionally distribute a substance containing controlled substance. Because these offenses each

6

require proof of a different fact than the state charge, under the Blockburger test, none of the federal charges are the same offense as the state charge to which Cybulski's Sixth Amendment right to counsel attached.

Cybulski also argues his statements to the ATF agents should be suppressed because they were involuntarily made under coercion and duress. (Paper 21 at 6.) An individual must be advised of Fifth Amendment rights before custodial interrogation and has the right not to speak and to request an attorney while in custody. Miranda v. Arizona, 384 U.S. 436 (1966). Interrogation must stop until an attorney is present. Id. at 474. The government bears the burden of establishing by a preponderance of the evidence that law enforcement officers properly advised an accused of his Fifth Amendment rights and that he made a knowing and voluntary waiver of those rights. Id. at 444; Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Ramirez, 79 F.3d 298, 304 (2d Cir. 1996). Furthermore, the government must show the defendant voluntarily relinquished his Miranda rights with a full understanding of the rights being waived and the consequences of waiver. Moran v. Burbine, 475 U.S. 412, 421 (1986).

An express written or oral waiver is not required. North Carolina v. Butler, 441 U.S. 369, 373 (1979). In assessing the defendant's comprehension and voluntariness of the waiver, the court must look to the totality of the circumstances, including the characteristics of the defendant, i.e., background, experience, and conduct, the setting surrounding the statement, and the conduct of the officers. Id. at 374-75; Green v.

Scully, 850 F.2d 894, 901-02 (2d Cir. 1988). Other relevant factors include the defendant's age, education, and intelligence, failure to give Miranda warnings, length of detention, nature of the interrogation, and use of physical punishment. United States v. Guarno, 819 F.2d 28, 30 (2d Cir. 1987) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)).

Here, clearly Cybulski waived his Miranda rights and his waiver was knowing and voluntary. Cybulski signed an Advice of Rights and Waiver form expressly stating he understood his rights and no threats had been made against him and no pressure or force was used. (Paper 24-2.) He also signed a written statement which included an affirmation that he made the statement freely and voluntarily without any threats made against him. (Paper 24-3 at 1.) Cybulski was in his late thirties, the questioning took place on one day in an office setting, and no evidence of physical punishment exists. Under these circumstances, the statements were voluntary and Cybulski made a knowing waiver under the Fifth Amendment.

IV. Conclusion

For the foregoing reasons, Defendant Cybulski's motion to suppress physical evidence and statements (Paper 21) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of October, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge